IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| JANE DOE,<br><br>    Plaintiff,<br><br>v.<br><br>ARTEMIS PARTNERS, LLC, d/b/a<br>MOUNTAINSIDE TREATMENT CENTER,<br>AURA HEALTHCARE LLC, d/b/a<br>MOUNTAINSIDE TREATMENT CENTER, and<br>MC1 HEALTHCARE LLC, d/b/a<br>MOUNTAINSIDE TREATMENT CENTER<br><br>    Defendants. | Case No.  3:26-cv-00206<br><br><br><br><br><br><br><br><br><br>February 10, 2026 |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION
FOR LEAVE TO PROCEED UNDER PSUEODNYM**

Plaintiff Jane Doe hereby submits this Memorandum of Law in Support of her Motion for Leave to Proceed Under Pseudonym.

## I.    FACTUAL BACKGROUND

In early 2024, Plaintiff Jane Doe, a young attorney beginning her promising legal career at one of the most prestigious law firms in the country, reached the conclusion that most people suffering from substance use disorder never realize: she had a problem and needed help. (Compl. ¶ 1.) Lawyers are twice as likely to develop a drinking problem as non-lawyers, but substance and alcohol abuse remain highly stigmatized in the legal profession, as discussed more in depth below.[1] She took time off work and confidentially sought that help at Mountainside Treatment Center, a residential substance abuse treatment facility in Canaan, Connecticut owned and

---

[1] *See Alcohol Use Disorders*, American Bar Association, (Jan. 13, 2021) https://www.americanbar.org/groups/lawyer_assistance/resources/alcohol_abuse_dependence/.

operated by Defendants Artemis Partners, LLC, d/b/a Mountainside Treatment Center, Aura Healthcare LLC, d/b/a Mountainside Treatment Center, and MC1 Healthcare LLC, d/b/a Mountainside Treatment Center (collectively, "Mountainside"). (*Id.* at ¶ 2.) Instead of receiving that help, during her brief stay at Mountainside, four of Mountainside's staff members preyed on Jane, including two who sexually assaulted her, causing permanent harm to Jane's physical and mental health and well-being, as well as to her career during crucial years when attorneys are vying for partnership. (*Id.* at ¶¶ 6, 9, 19.)

Mountainside's staff members' predation began as soon as Jane stepped in the door. (*Id.* at ¶¶ 7–8.) Brandon Roe, a Mountainside security associate, conducted Jane's intake to residential treatment, and, while doing so, he saw Jane, intoxicated, drinking from a flask. (*Id.*) He grabbed the flask, escorted Jane to an unsupervised intake room and ordered her: "Here's what we're gonna do. You're gonna suck my dick for 20 seconds, and I'm not gonna lose my job for a fling so this has got to be more than that—you can come visit me in Connecticut and stuff." (*Id.* at ¶ 7.) Brandon Roe then sexually assaulted Jane by ordering her to perform oral sex on him. (*Id.* at ¶ 8.) Jane acquiesced, although she was under the influence of alcohol and ketamine and could not consent to sexual activity. (*Id.* at ¶ 9.)

During her "treatment," other Mountainside staff members sexually assaulted, exploited, and/or harassed Jane, taking advantage of her substance withdrawals and the pleasure-seeking activities, impaired decision-making, and impulsivity associated with this vulnerable state. (*Id.* ¶¶ 5–6, 9.) Another Mountainside staff member, Stuart Roe, sexually assaulted Jane multiple times in her room during detox even after other staff members raised concerns about him spending time alone with Jane. (*Id.* at ¶ 6.)

2

Yet another Mountainside staff member named David Roe approached Jane and told her that she was "cute" but also told her "I can't, I can't, there are cameras everywhere." (*Id.* at ¶ 112.) A day or two later, David Roe told Jane to step into the stairwell where there were no cameras, and he kissed her. (*Id.* at ¶ 114 .) David Roe also agreed to meet Jane in a bathroom for sex, although he left her waiting in the bathroom. (*Id.* at ¶ 115.) At an event where non-Mountainside staff and clients could attend, Jane sat with David Roe and two of his friends who did not work with Mountainside. (*Id.* at ¶ 116.) After the event, David Roe asked Jane if she would hook up with a friend of his, shamelessly attempting to exploit a defenseless client. (*Id.* at ¶ 117.) Another Mountainside staff member, Richard Roe, told Jane that she "made his body feel good," that he wanted to hook up with her but could not, and invited her to his office along one evening. (*Id.* at ¶ 137.)

The sexual assaults, exploitation, and harassment Jane experienced derailed her substance abuse treatment. (*Id.* at ¶¶ 159–60.) She continues to struggle with alcohol addiction, but she cannot bring herself to seek further residential treatment at any facility due to the sexual assaults and exploitation she endured while at Mountainside. (*Id.*) Jane experienced shame, embarrassment, and severe emotional distress. (*Id.* at ¶ 159.)

In addition to derailing her treatment, the assaults, exploitation, and harassment have significantly impacted Jane in other ways. (*Id.* at ¶ 156.) She has experienced and still experiences increased anxiety and has suffered from panic attacks for the first time in her life. (*Id.* at ¶ 157.) The first time she experienced a panic attack, she did not know what was happening and had pain shooting down her arms, was lightheaded, and almost fainted, so she called an ambulance. (*Id.*) The abuse's effects have also harmed Jane's job performance. (*Id.* at ¶ 158.) She still works a demanding job as an associate at a large law firm. (*Id.*) Prior to the abuse,

she only received positive performance reviews, even when she was drinking twelve alcoholic drinks a day and using ketamine. (*Id.*) Following the abuse, she has since received negative performance reviews, which can be associated with the ongoing trauma she has experienced and is experiencing from the sexual assaults and exploitation. (*Id.*)

## II.     LEGAL STANDARD

While Federal Rule of Civil Procedure 10(a) requires a complaint to "include the names of all the parties," district courts, in their discretion, may allow litigants to proceed under pseudonym in some circumstances. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 189 (2d Cir. 2008). Before doing so, a court must weigh the plaintiff's interest in proceeding under pseudonym against "the public interest in disclosure and any prejudice to the defendant." *Id.* In making this determination, courts weigh ten non-exhaustive factors, including:

(1)   "Whether the litigation involves matters that are highly sensitive and of a personal nature";

(2)   "Whether identification poses a risk of retaliatory physical or mental harm to the party seeking to proceed anonymously or even more critically, to innocent non-parties";

(3)   "Whether identification presents other harms and the likely severity of those harms, including whether the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity";

(4)   "Whether the plaintiff is particularly vulnerable to the possible harms of disclosure, particularly in light of [her] age";

(5)   "Whether the suit is challenging the actions of the government or that of private parties";

(6) "Whether the defendant is prejudiced by allowing the plaintiff to press [her] claims anonymously, whether the nature of that prejudice (if any) differs at any particular stage of the litigation, and whether any prejudice can be mitigated by the district court";

(7) "Whether the plaintiff's identify has thus far been kept confidential";

(8) "Whether the public's interest in the litigation is furthered by requiring the plaintiff to disclose [her] identity";

(9) "Whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigants' identities"; and

(10) "Whether there are any alternative mechanisms for protecting the confidentiality of the plaintiff."

*Id.* at 189–90 (cleaned up). In addition, district courts may consider "other factors relevant to the particular case." *Id.*

### III. ARGUMENT

**A. The Pseudonym Factors Favor Permitting Plaintiff to Proceed Under Pseudonym Because her Privacy Interest Outweighs the General Presumption Favoring Open Trials and Any Prejudice to Defendants**

"Courts have permitted cases to proceed anonymously when they involve claims relating to sexual misconduct. . . ." *Doe v. Paychex, Inc.*, Case No. 3:17-cv-2031(VAB), 2020 U.S. Dist. LEXIS 6692, at *24–25 (D. Conn. Jan. 15, 2020) (citing *Doe v. Univ. of Conn.*, No. 3:09-cv-1071 JGM, 2013 U.S. Dist. LEXIS 119251, at *26 (D. Conn. Aug. 22, 2013)). Although "allegations of sexual assault, by themselves, are not sufficient to entitle a plaintiff to proceed under a pseudonym," such allegations are "paradigmatic examples of highly sensitive and

personal claims and thus favor a plaintiff's use of a pseudonym." *Rapp v. Fowler*, 537 F. Supp. 3d 521, 528 (S.D.N.Y. 2021) (citations omitted).

Here, as is often true in cases involving sexual assault, the ten factors taken together favor allowing Plaintiff to proceed under pseudonym. This litigation concerns allegations involving sexual assault that occurred while she sought treatment for a stigmatized disorder. If Plaintiff's name is revealed and forever tied to this highly personal and intimate information, she faces an immense risk of mental or physical harm as well as harm to her career. In contrast, Mountainside faces no prejudice if Plaintiff is permitted to proceed under pseudonym because it possesses Plaintiff's name and relevant witnesses and documents and therefore can effectively conduct discovery and prepare its defenses. Lastly, allowing Plaintiff to proceed under pseudonym furthers the public interest in survivors coming forward and in ensuring safety in residential treatment facilities. Accordingly, as demonstrated through the ten factors analyzed below, Plaintiff should be permitted to proceed under pseudonym.[2]

> i. ***Factor One: This Litigation Involves Allegations of Sexual Assault and Treatment for a Stigmatized Disorder Which Are Highly Sensitive and Personal Matters***

Allegations involving sexual assault are "paradigmatic examples of highly sensitive and personal claims and thus favor a plaintiff's use of a pseudonym." *Rapp*, 537 F. Supp. 3d at 528; *Doe v. Gerken*, Civ. No. 3:21CV01525(SALM), 2022 U.S. Dist. LEXIS 8329, at *6–7 (D. Conn. Jan. 18, 2022) (citing *Rapp*, 537 F. Supp. 3d at 528). Additionally, "courts in this Circuit and elsewhere consistently hold that severe psychiatric illness, including those associated with suicide and self-harm, are subject to substantial societal stigma and constitute intimate, personal

---

[2] Plaintiff acknowledges that the fifth and ninth factors disfavor pseudonymity as she is suing a private party and as this case involves factual issues as well as legal issues. However, the remaining factors outweigh these two factors.

matters." *Doe v. Wesleyan Univ.*, Civil No. 3:19-cv-01519 (JBA), 2020 U.S. Dist. LEXIS 267036, at *10 (D. Conn. Sept. 15, 2020) (collecting cases).

Here, this case involves allegations of sexual assault, which favors pseudonymity. Plaintiff's allegations also center around her treatment for substance abuse disorder, a highly stigmatized disorder. (Compl. ¶ 1–2.) During this treatment, she also disclosed that she had a history of self-harm. (*Id.* at ¶ 73; Declaration of Jane Dane, Ex. 1, at ¶ 9.) All this information is highly personal and of a sensitive nature. Therefore, the first factor favors allowing Plaintiff to proceed under pseudonym.

        *ii.*       *Factors Two and Three: Plaintiff and Third Parties Face a Severe Risk of Harm if Plaintiff is Identified*

"The second and third factors evaluate the risk that identification would present and the likelihood of those physical and mental harms. If disclosure creates risk of harm from third parties, disclosure is disfavored." *Doe v. Townes*, No. 19-cv-8034, 2020 U.S. Dist. LEXIS 83550, at *10 (S.D.N.Y. May 12, 2020) (citation omitted).

Here, Plaintiff faces concrete risks of physical and mental harm. Plaintiff has experienced panic attacks, which are treated with medication, and increased anxiety since the assaults and exploitation she endured. (Compl. ¶ 157; Ex. 1, at ¶ 14.) She is worried that, should her name be revealed, these symptoms will worsen, and she also is worried that she is at significant risk of dangerous substance abuse if her name is revealed given her history of substance abuse. (Ex. 1, at ¶¶ 15–17.) In addition, Plaintiff has a history of self-harm, and the effect of her name being revealed could also worsen this symptom. (*Id.* ¶ 73; Ex. 1, at ¶¶ 9, 16.) As further evidence of these risks, Plaintiff affirmed that she would face a difficult decision of discontinuing this litigation rather than be publicly identified. (Ex. 1, at ¶ 24.)

These harms are also compounded by Plaintiff's career. As someone at the top of the legal profession, outing Plaintiff as a survivor of sexual assault could cause professional consequences in addition to the personal and professional consequences every survivor faces. *See Roe v. Minguela*, No. 16-cv-02744, 2018 U.S. Dist. LEXIS 147677, at *31 (D. Colo. Aug. 30, 2018) ("Victims of rape and other forms [of] sexual assault are often stigmatized in a manner that affects their educational, employment, and social prospects.") (citing Paul Marcus & Tara L. McMahon, *Limiting Disclosure of Rape Victims' Identities*, 64 S. Cal. L. Rev. 1020, 1030–36 (1991)). Being outed as a survivor of sexual assault, *who was assaulted while seeking drug and alcohol abuse treatment*, could have devasting effects on her career, which is at a critical stage as she considers partnership at a large firm. As she advances in her firm or elsewhere and seeks to establish professional relationships and develop clients of her own, everyone she encounters could learn that she was sexually assaulted on multiple occasions while undergoing substance abuse treatment if her name is revealed.

Publicly revealing that she underwent substance abuse treatment could also have devastating effects on her legal career. It has been well-documented that attorneys face unique barriers to undergoing substance abuse treatment. *See, e.g.*, Butler Center for Research, *Substance Use Disorders Among Legal Professionals*, HAZELDON BETTY FORD FOUNDATION (March 2017), https://www.hazeldenbettyford.org/research-studies/addiction-research/substance-abuse-legal-professionals. In a 2016 survey, 63% of law students feared a "potential threat to bar admission," and 62% feared a "potential threat to job or academic status" if they sought help for a substance use disorder. Organ, J.M., Jaffe, D.B., & Bender, K.m. *Suffering in Silence: The Survey of Law Student Well-Being and the Reluctance of Law Students to Seek Help for Substance Use and Mental Health Concern*, 66 J. of L. Educ. 116 (2016),

https://jle.aals.org/home/vol66/iss1/13/. If Plaintiff must publicly reveal she underwent substance abuse treatment for alcohol and ketamine, she faces these same threats to her current job opportunities, future career, professional network, and potential issues with her ability to practice law due to no fault of her own.

In addition, non-parties face harm. The perpetrators, whose names are also currently kept confidential, also face a risk of harm if Plaintiff's name is revealed as they will be publicly accused of sexual assault. *See Doe v. Vassar Coll.*, No. 19 Civ. 09601, 2019 U.S. Dist. LEXIS 196933, at *2 (S.D.N.Y. Nov. 13, 2019) ("Public exposure of [alleged non-consensual sexual contact] for both the victim and the accused, at this stage, may be personally damaging."). As do other individuals who were in treatment with Plaintiff as they will almost certainly be witnesses to Plaintiff's factual allegations and were likely interviewed as part of Mountainside's investigation. If other individuals undergoing substance treatment must be revealed, they face the harm of being identified as receiving substance abuse treatment, highly personal and intimate information that could cause them harm.

Therefore, this factor favors allowing Plaintiff to proceed under pseudonym.

### iii. *Factor Four: Plaintiff is Particularly Vulnerable to the Possible Harms of Disclosure*

As evidenced by her declaration, Plaintiff is particularly vulnerable to the possible harms of disclosure due to her anxiety and other symptoms, including panic attacks, which have required medical care, and a history of self-harm. (Ex. 1, at ¶¶ 9, 14–18.) Accordingly, this factor favors allowing Plaintiff to proceed under pseudonym.

> iv. *Factor Six: Defendants Are Not Prejudiced by Plaintiff Proceeding Under Pseudonym*

Courts must analyze "whether the defendant is prejudiced by allowing the plaintiff to press [her] claims anonymously, whether the nature of that prejudice (if any) differs at any particular stage of the litigation, and whether any prejudice can be mitigated by the district court." *Doe v. Skyline Autos. Inc.*, 375 F. Supp. 3d 401, 407 (S.D.N.Y. 2019) (citation omitted). "Courts in the Second Circuit have found that defendants are not prejudiced by a plaintiff's anonymity where the defendant is aware of the plaintiff's identity." *Wesleyan*, 2020 U.S. Dist. LEXIS 267036, at *12 (collecting cases).

Here, Plaintiff, through her counsel, has already revealed her name to Mountainside and its counsel. (Declaration of Olympias Iliana Konidaris, Ex. A, at ¶ 3.) Therefore, Mountainside faces little risk of prejudice. Further, any risk of prejudice is lessened because Mountainside itself has already conducted an investigation of Jane's complaints through its Client Rights Office. (Compl. ¶ 118.) Therefore, Mountainside can identify relevant materials and witnesses to its defenses, and such materials and the identity of the witnesses are already in its possession and/or control. These witnesses are also already aware of Plaintiff's identity and thus will be able to provide information surrounding the allegations. Plaintiff is also willing to enter into a stipulated protective order or a similar confidentiality agreement to minimize any prejudice during discovery. Lastly, this Court has discretion to revisit any ruling permitting Plaintiff to proceed by pseudonym should Mountainside raise legitimate concerns that it is prejudiced by Plaintiff's pseudonymity as the case proceeds. *See Doe v. Gooding*, No. 20-cv-06569, 2022 U.S. Dist. LEXIS 68607, at *11 (S.D.N.Y. Apr. 13, 2022) (noting that "the Court's decision does not resolve the pseudonym issue for all time" and may be revisited at another state in the litigation). Accordingly, this factor favors allowing Plaintiff to proceed under pseudonym.

### v. Factor Seven: Plaintiff's Identity Has Been Kept Confidential to the General Public

"Courts are instructed to examine the public knowledge of the plaintiff's allegations, rather than the parties' knowledge." *Wesleyan*, 2020 U.S. Dist. LEXIS 267036, at *13 (citing *Doe v. Gong Xi Fa Cai., Inc.*, No. 19-CV-2678, 2019 U.S. Dist. LEXIS 114919, at *2 (S.D.N.Y. Jul. 10, 2019)). Here, Plaintiff's identity is currently confidential to the general public and therefore this factor favors pseudonymity. (Ex. 1, at ¶ 22.) And, as evidenced by seeking to proceed under a pseudonym and her declaration stating such, Plaintiff does not wish for her identity to become public. (Ex. 1, at ¶ 23.) Therefore, this factor favors allowing Plaintiff to proceed under pseudonym.

### vi. Factor Eight: Allowing Plaintiff to Proceed Under Pseudonym Furthers the Public's Interest in Survivors Coming Forward and Vindicating Their Rights and in the Safety of Residential Treatment Facilities

"[C]ourts have recognized the important public interest in protecting the identities of sexual assault victims to ensure that other victims would not be deterred from reporting similar crimes." *Doe v. Hunter*, 2024 U.S. Dist. LEXIS 143961, at *6 (S.D.N.Y. Aug. 9, 2024) (citing *Vassar Coll.*, 2019 U.S. Dist. LEXIS 196933, at *2). Compounding on this important public interest, sex crimes and sexual assault are highly underreported. *See* Rachel E. Morgan & Jennifer L. Truman, U.S. Dep't of Justice, *Criminal Victimization*, at 8, https://www.ojp.gov/ncjrs/virtual-library/abstracts/criminal-victimization-2019. Many sexual assault survivors do not come forward because they fear they will have to reveal their identities and as a result suffer shame, blaming, retaliation, and harm to their careers, social lives, and families. *See* Jayne S. Ressler, *Anonymous Plaintiffs and Sexual Misconduct*, 50 Seton Hall L. Rev. 955 (2020). Pseudonymity can limit the harms associated with coming forward.

11

Additionally, the public has an interest in the safety of residential treatment facilities. Specifically, in Connecticut, the Connecticut Department of Public Health monitors the safety of residential treatment facilities and provides requirements to be a licensed facility. (Compl. ¶ 45.) The state's regulation and licensing requirements underscores the importance of protecting individuals within these facilities, who are vulnerable to sexual assault or exploitation. Allowing individuals to proceed under pseudonym to pursue justice for wrongs they experienced while in substance abuse treatment limits the harms associated with coming forward as an individual undergoing substance abuse treatment. In contrast, requiring an individual to publicly reveal that they underwent substance abuse treatment in connection with their name could deter reporting wrongdoing in these facilities. Accordingly, this factor weighs in favor of allowing Plaintiff to proceed under pseudonym.

      *vii.*    **_Factor Ten: There Are No Alternative Mechanisms to Protect the Confidentiality of Plaintiff Without Burdening the Public Interest_**

Finally, there are no alternatives mechanisms to protect the confidentiality of Plaintiff and nonparties without burdening the public interest. Plaintiff is not seeking to seal the proceedings from the public, which would more greatly burden the public's interest in open court proceedings. Thus, this factor weighs in favor of allowing Plaintiff to proceed under pseudonym.

## IV.     <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff respectfully requests that she be allowed to proceed under pseudonym in this case.

Dated: February 10, 2026                                    Respectfully submitted,

**MOSKOW LAW GROUP, LLC**            /s/Neal L. Moskow
                                                              Neal L. Moskow (04516)
                                                              Moskow Law Group, LLC
                                                              425 Kings Highway East
                                                              Second Floor

Fairfield, CT 06825
Telephone: (475) 999-4177
Fax: (475) 999-4186
neal@moskowlaw.com

**THE FIERBERG NATIONAL LAW GROUP, PLLC**

/s/Olympias Iliana Konidaris
Olympias Iliana Konidaris*
305 Broadway, Seventh Floor
New York, New York 10007
Telephone: (347) 504-0220
Fax: (231) 252-8100
ikonidaris@tfnlgroup.com

Jacob R. Goodman*
Douglas E. Fierberg*
201 East 17th Street, Suite A
Traverse City, MI 49684
Telephone: (231) 933-0180
Fax: (231) 252-8100
jgoodman@tfnlgroup.com
dfierberg@tfnlgroup.com

*Pro hac vice motion forthcoming*

*Attorneys for Plaintiff Jane Doe*